UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SIERRA PACIFIC INDUSTRIES,

No. 2:11-cv-00346-MCE-JFM

       Plaintiff,

   v.                     <u>MEMORANDUM AND ORDER</u>

AMERICAN STATES INSURANCE
COMPANY,

       Defendant.

----oo0oo----

Plaintiff Sierra Pacific Industries, Inc. ("SPI") instituted
the present action against American States Insurance Company
("American") to determine the rights and obligations attendant to
a policy of liability insurance issued by American with respect
to which Sierra claims coverage as a result of the so-called
Moonlight Fire which ignited on September 3, 2009 in Plumas
County, California.  Through the present motion, SPI seeks to
stay the very action it commenced on grounds that at least one
trial in the numerous actions spawned by the fire is scheduled to
start shortly.

1   SPI argues that having to defend that action, along with

2   responding to discovery propounded in the present coverage case,

3   would force it to fight a so-called "two front war" that would

4   improperly deflect its resources from being squarely directed

5   towards prevailing in the underlying case.  SPI consequently

6   seeks a six-month stay of the instant coverage lawsuit.

7          For the reasons set forth below, SPI's Motion to Stay will

8   be denied.[1]

9

10                          **BACKGROUND**

11

12         As a result of the aforementioned September 2007 Moonlight

13  Fire, a total of seven lawsuits were brought against SPI by

14  various public and private entities, including both the United

15  States and the State of California, for damages stemming from the

16  fire.  According to SPI, those seven suits seek some one billion

17  dollars in total aggregate claims.

18         Prior to the fire, SPI entered into timber harvest contracts

19  with multiple Plumas County landowners.  Under the terms of those

20  contracts, SPI agreed to defend, indemnify and hold harmless the

21  landowners from and against any and all claims arising from the

22  timber harvest operations on the landowners' property.  SPI then

23  subcontracted the actual harvest operations to Howell's Forest

24  Harvesting ("Howell").

25  ///

26
_____

27         [1] Because oral argument will not be of material assistance,
    the Court ordered this matter submitted on the briefs.  E.D. Cal.
28  Local Rule 230(g)

Pursuant to Howell's contract with SPI, Howell agreed to defend and indemnify SPI from all liability and damages arising from the timber harvest.  Howell accordingly obtained a policy of commercial general liability insurance from American that named Plaintiff as an additional insured.  Although that policy had aggregate limits of $1,000,000, it did not cover any liability and damages arising from SPI's own independent negligence in causing or contributing to the fire.

Several of the lawsuits filed following the fire, including the action filed by the United States, contend there was indeed independent negligence on the part of SPI.  The United States, for example, alleges that SPI should have had an independent monitor on site to help guard against fire hazards, and in fact had a non-delegable duty to do so.  The United States also asserts theories of negligent hiring and supervision against SPI.

SPI alleges that American failed to acknowledge Plaintiff's tender of defense with respect to the lawsuits, and also failed to acknowledge that tender before the date SPI's responsive pleadings were due in the lawsuit filed on behalf of the government.  Because no defense counsel had been assigned by that time, SPI claims it was forced to hire its own counsel to appear and protect its interest by avoiding a default judgment.

While American did ultimately acknowledge SPI's tender of defense, SPI claims that it proposed transferring the defense of the lawsuit away from the counsel selected by SPI and to a panel defense firm with lower rates.

///

///

1   SPI alleges that the firm proposed by American lacked the needed
2   experience in defending lawsuits of the type and magnitude being
3   asserted against SPI in the wake of the fire.  Given those
4   concerns, SPI continued to have the counsel they retained, the
5   Downey Brand firm in Sacramento, represent their interests.
6   American has refused to pay Downey any more than the hourly rate
7   of American's selected defense firm, leaving SPI to shoulder the
8   difference.  SPI filed this lawsuit in order to obtain a judicial
9   determination that American should be required to indemnify it
10  for those additional costs.

11      The United States' lawsuit against SPI is presently set to
12  go to trial before another judge of this Court on July 2, 2012.
13  No information has been provided to this Court as to when the
14  remaining six lawsuits, which are pending in various state
15  courts, are scheduled to be tried.  At any rate, SPI argues that
16  its counsel in the underlying case will be forced to become
17  involved in the preparation of discovery responses coming due in
18  the instant coverage action, and that accordingly this action
19  should be stayed during the pendency of the underlying lawsuits.
20  SPI's stay request is limited, however, inasmuch as it proposes
21  that the present action continue with respect to whether SPI is
22  entitled to independent counsel, and with respect to the hourly
23  rate that American should pay for SPI's defense.[2]

24

25
_____

26      [2]SPI has requested that the Court take judicial notice of
    various documents filed in that case, entitled United States v.
27  Sierra Pacific, et al., Case No. 2:09-cv-02445-KJM-EFB.  Those
    requests are unopposed and are accordingly granted, although SPI
28  need not have sought judicial notice as to documents filed in
    another action also pending before this Court.

4

1
2                                **STANDARD**
3
4         The power to issue a motion to stay derives from a federal
5    district court's power to control its docket and to ensure that
6    cases before it are justly determined.  <u>Levya v. Certified</u>
7    <u>Grocers of Cal., Ltd.</u>, 593 F.2d 857, 864 (9th Cir. 1979), <u>cert.</u>
8    <u>denied</u>, 444 U.S. 827 (1979).  Indeed, "[a] trial court may, with
9    propriety, find it is efficient for its own docket and the
10   fairest course for the parties to enter a stay of an action
11   before it, pending resolution of independent proceedings which
12   bear upon the case."  <u>Id.</u> at 863.  "This rule applies whether the
13   separate proceedings are judicial, administrative, or arbitral in
14   character, and does not require that the issues in such
15   proceedings are necessarily controlling of the action before the
16   court."  <u>Id.</u> at 863-64.  A federal district court has broad
17   discretion in deciding whether to issue a stay.  <u>Fed. Sav. & Loan</u>
18   <u>Ins. Corp. v. Molinaro</u>, 889 F.2d 899, 902 (9th Cir. 1989).
19   Nonetheless, "[w]here it is proposed that a pending proceeding be
20   stayed, the competing interests which will be affected by the
21   granting or refusal to grant a stay must be weighed."  <u>CMAX, Inc.</u>
22   <u>v. Hall</u>, 300 F.2d 265, 268 (9th Cir. 1962).  "Among these
23   competing interests are the possible damage which may result from
24   the granting of a stay, the hardship or inequity which a party
25   may suffer in being required to go forward, and the orderly
26   course of justice measured in terms of the simplifying or
27   complicating of issues, proof, and questions of law which could
28   be expected to result from a stay."  <u>Id.</u>

                                     5

**ANALYSIS**

SPI argues that a stay of these proceedings is mandated by the California Supreme Court's decision in Montrose Chem. Corp. of Cal. v. Superior Court, 6 Cal. 4th 287 (1993) ("Montrose I"). As the court recognized in Montrose I, a stay of a coverage action against an insurer pending the resolution of underlying litigation "is appropriate when the coverage question turns on facts to be litigated in the underlying action." Id. at 301. If the coverage case "can be resolved without prejudice to the insured in the underlying action— by means of undisputed facts, issues of law, or factual issues unrelated to the issues in the underlying action— the declaratory relief action [seeking a coverage adjudication] need not be stayed." Great American Ins. Co. v. Superior Court, 178 Cal. App. 4th 221, 235 (2009) (citing GGIS Ins. Servs., Inc. v. Superior Court, 168 Cal. App. 4th 1493, 1505 (2009).

In determining whether a stay should be granted under this analysis, courts have looked to 1) whether there are overlapping factual issues; 2) whether the insured will be required to fight a two-front war; and 3) whether the insurer in its adverse relationship to the insured in the coverage action effectively attacks its own insured, thereby giving aid to the underlying claimant to the prejudice of the insured. See Haskel, Inc. v. Superior Ct., 33 Cal. App. 4th 963, 912 (1995).

///

///

///

6

1    The first and third factors delineated above are

2    interrelated in that both turn on whether there are overlapping

3    issues present in both cases that could work to the insured's

4    detriment in the underlying case if adjudicated beforehand in the

5    coverage proceeding.  A stay is always required if such

6    circumstances are indeed present.  United Enterprises, Inc. v.

7    Superior Court, 183 Cal. App. 4th 1004, 1012 (2010).  If no

8    factual overlap between the two cases exist, however, there can

9    be no issue on which the insurer can align forces with a third

10    party and against its insured, and consequently no stay is

11    indicated.  Great American, 178 Cal. App. 4th 221, 236.

12    SPI argues that a determination in the coverage case that

13    SPI was either derivatively or independently liable could

14    significantly impact the viability of SPI's defense in the

15    underlying action.  SPI therefore argues that the requisite

16    overlap to justify a stay is present.  American, however, points

17    out that it is defending its insured in the underlying case with

18    no reservation of rights.  That representation on American's part

19    means that it will provide a defense and indemnify SPI up to the

20    applicable $1,000,000 policy limit, without regard to any

21    potential coverage defense American could assert to the effect

22    that negligence on the part of SPI was derivative (covered under

23    the policy) or independent (not covered).  American argues that

24    its unqualified defense therefore negates the overlapping issue

25    identified by SPI.  The Court agrees.

26    ///

27    ///

28    ///

7

1   The issues that the coverage action does in fact present, like
2   the timing of SPI's defense tender, American's acceptance of that
3   tender, and the competence of the defense counsel selected by
4   American, have nothing to do with SPI's liability in the
5   underlying case, and the adjudication of those issues appears to
6   be completely separate and apart from anything to be determined
7   in the underlying action against SPI.

8          While SPI also argues that the disclosure of an expert
9   report authored by Frank Holbrook to opposing counsel in the
10  underlying action effectively amounted to a joinder between
11  American and SPI's adversaries in the underlying case (at the
12  expense of SPI), there is no indication that the report's
13  disclosure was anything other than inadvertent, and the panel
14  counsel who made the mistaken disclosure apparently did
15  everything possible to rectify that error once it was discovered.
16  Significantly, too, since American's interest is aligned with
17  SPI's in defeating all claims made against SPI (as indicated
18  above the absence of any reservation means that American is on
19  the hook for any liability determination as to SPI), it would
20  make no sense for American to sabotage SPI's liability position.
21  Moreover, and in any event, SPI has not explained how the
22  report's disclosure constituted any actual prejudice to its
23  position in any event.
24  ///
25  ///
26  ///
27  ///
28  ///

1    In sum, then, neither the first or third <u>Montrose I</u> factors
2    mandate in favor of a stay in the instant coverage action.  That
3    leaves only the second factor- the potential prejudice to SPI in
4    having to wage a two-front war with both its insurer in the
5    coverage action and against its adversaries in the underlying
6    liability case- as potentially pointing in favor of staying this
7    case.  Even where no factual overlap is present, this Court has
8    the discretion to stay an action in order to avoid the specter of
9    such a two-front war.  <u>See</u> <u>United Enterprises, Inc.</u>, 183 Cal.
10   App. 4th at 1012.  An insured can be prejudiced by having to
11   expend resources fighting with its own insurer while at the same
12   time attempting to defend itself against liability that its
13   insurance was presumably supposed to cover.  <u>See</u> <u>Allied Prop. &</u>
14   <u>Cas. Ins Co. v. Roberts,</u> 2011 wl 2495691 AT *3 (E.D. Cal. 2011).
15   In assessing whether a stay is indicated on this basis, the Court
16   must look both to any potential prejudice on the insured's part
17   as well as the prejudice to the insurer in not proceeding forward
18   with a coverage determination.  <u>See</u> <u>Great American</u>, 178 Cal. App.
19   4th at 236.

20   It cannot be overlooked that the present coverage action was
21   instituted by SPI itself.  SPI therefore complains about having
22   to perform the routine discovery and work associated with its own
23   case.  In addition, while SPI argues that counsel is responsible
24   for its defense in the underlying case may have to assist
25   coverage counsel in responding to discovery propounded by
26   American, trial in this matter is not scheduled until August 5,
27   2013, more than a year in the future.
28   ///

1  That continuance, which occurred after SPI filed the instant

2  motion, gives the parties substantially more time for pretrial

3  preparation of this matter, including discovery.  SPI has not

4  demonstrated why measures short of an outright stay in this

5  action would not be sufficient to protect it from any potential

6  prejudice in preparing for trial in the underlying case, which at

7  this point is scheduled for July 2, 2012.  SPI could apply for a

8  protective order, for example, should any particular discovery

9  unduly interferes with its preparation for the underlying case.

10 Downey Brand, as one of the largest firms in this area, could

11 also presumably devote additional staff resources to assist with

12 the discovery at issue.  Finally, it also bears mention that not

13 even SPI advocates for a total stay of this matter; as indicated

14 above, it wants the matter to proceed as to its right to

15 independent counsel and with respect to what hourly rate should

16 be paid to its counsel.

17      American, on the other hand, points out that a stay as

18 advocated by SPI could in fact prejudice its interests since

19 certain coverage defenses it intends to assert by way of the

20 coverage action (like SPI's attempt to improperly wrest control

21 of the liability action from American in breach of the insurance

22 contract) would necessarily be placed on hold, not only in the

23 federal action but also in the six concurrently pending state

24 court lawsuits as well.  Given what appear to be massive defense

25 costs involved in the defense of those actions, the potential for

26 prejudice to American cannot be overlooked.

27 ///

28 ///

10

Although the Court recognizes that SPI, by the terms of its motion, ostensibly seeks only a six-month stay of the proceeding, if the Court were to agree with the rationale underlying its stay request the potential for yet additional stay period during the pendency of the multiple lawsuits pending against SPI would seem likely.

**CONCLUSION**

For all the foregoing reasons, SPI's Motion for Stay (ECF No. 40) is DENIED.

IT IS SO ORDERED.

Dated: June 21, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE