UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SIERRA PACIFIC INDUSTRIES,          No. 2:11-cv-00346-MCE-JFM

      Plaintiff,

    v.                                  MEMORANDUM AND ORDER

AMERICAN STATES INSURANCE
COMPANY,

      Defendant.

----oo0oo----

Before the Court is Plaintiff/Counterdefendant Sierra Pacific Industries' ("Sierra") Motion to Dismiss ("MTD") Defendant/Counterclaimant American States Insurance Company's ("ASIC") Second Claim for Relief in its Counterclaim.[1] (ECF No. 26.)

///

///

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. R. 230(g).

1

1  Also before the Court is Sierra's Motion for Judgment on the
2  Pleadings.[2]  (ECF No. 27.)  For the reasons that follow, both the
3  Motion to Dismiss and the Motion for Judgment on the Pleadings
4  are denied.

5

6                            **BACKGROUND**[3]

7

8        This lawsuit is based on Sierra's contention that ASIC
9  breached its contractual duty to defend Sierra in multiple
10 lawsuits stemming from the "Moonlight Fire," a 2007 fire in or
11 near Plumas National Forest that burned approximately 65,000
12 acres.
13 ///
14 ///
15 ///
16 ///
17 ///

18

19       [2] Pursuant to Federal Rules of Evidence 201(b) (authorizing
   judicial notice of adjudicative facts "capable of accurate and
20 ready determination by resort to sources whose accuracy cannot be
   reasonably questioned"), in relation to its Motion for Judgment
21 on the Pleadings, Sierra requests the Court take judicial notice
   of the United States' Complaint in the Eastern District of
22 California, Case 2:09-cv-02445-KJM-EFB Filed 08/31/09.  Sierra's
   request is unopposed and is the proper subject of judicial
23 notice.  See, e.g., Champlaie v. BAC Home Loans Servicing, LP,
   706 F. Supp. 2d 1029, 1040 (E.D. Cal. 2009); Lee v. County of
24 Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (court may take
   judicial notice of matters of public record).  Accordingly,
25 Sierra's Request for Judicial Notice (ECF No. 28) is granted.

26       [3] Except where otherwise noted, the following facts are
   taken from ASIC's Counterclaim.  (ECF No. 20.)  Page references
27 to documents filed in this action will be to the Court's ECF
   pagination.  For the purposes of the Motion to Dismiss, the Court
28 accepts ASIC's facts as true and makes all inferences in the
   light most favorable to ASIC.

1  The primary issues that are presently in contention, both in
2  Sierra's Motion to Dismiss the Second Claim in ASIC's
3  Counterclaim and Sierra's Motion for Judgment on the Pleadings,
4  relate to Sierra's desire to utilize the services of its choice
5  of counsel and have ASIC pay that firm's billing rates, which run
6  counter to ASIC's position that Sierra must either (1) accept
7  ASIC's choice of panel counsel, or, if Sierra insists on its
8  choice of counsel, (2) accept the panel counsel hourly rate of
9  $150 an hour.

10      The underlying events giving rise to this action began in
11 2007, when Sierra entered into a timber harvest contract with
12 multiple private landowners ("the Landowners") in Plumas County,
13 in which Sierra agreed to defend, indemnify and hold harmless the
14 Landowners from and against any and all claims arising from the
15 timber harvest operations on the Landowner's property.[4]  Sierra
16 then subcontracted the timber harvest operations to Howell's
17 Forest Harvesting ("Howell").  In its contract with Sierra,
18 Howell agreed to defend and indemnify Sierra from all liability
19 and damages that might arise out of the timber harvest.  ASIC
20 provided Howell with a commercial general liability ("CGL")
21 insurance policy (the "Policy"), under which Sierra was an
22 additional insured.[5]
23 ///

24
25      [4] ASIC alleges that Sierra provided the Landowners with a
   certificate of insurance reflecting that it was covered under a
26 commercial general liability insurance policy issued by the
   Insurance Company of the State of Pennsylvania.

27      [5] Additional insurance is provided to other individuals or
   entities than those initially named on the named insured's
28 policy.

1    In the Policy, ASIC agreed to "those sums that the insured
2  becomes legally obligated to pay as damages because of 'bodily
3  injury' or 'property damage' to which this insurance applies," up
4  to the limits of the Policy, and promised to "defend the insured
5  against any 'suit' seeking those damages."  (See Counterclaim at
6  5.)  The Policy also includes a cooperation clause, obligating
7  the insured to "[c]ooperate with us in the investigation,
8  settlement or defense of the 'suit.'" (Id. at 7.)

9    The Moonlight Fire ignited in September 2007, and bulldozers
10 operated by Howell employees may have caused the spark that
11 ignited it.[6]

12   On August 7, 2009, the California Department of Forestry and
13 Fire Protection ("Cal Fire") filed a complaint against Sierra,
14 Howell and others in the Plumas County Superior Court seeking
15 various costs and damages arising from the fire (the "Cal Fire
16 Action").  In response, on or about August 26, 2009, Sierra
17 retained Downey Brand LLP ("Downey Brand") to defend it.  Then on
18 August 31, 2009, the United States filed a complaint against
19 Sierra, Howell and others in the Eastern District of California
20 (the "Federal Action"), also seeking various costs and damages
21 arising from the fire.

22 ///

23 ///

24 ///

25

26   [6] Several of the subsequent lawsuits also allege that Sierra
   was independently negligent because it had a non-delegable duty
27 to have an employee on site to detect, control and suppress any
   fires in the area of Howell's operations.  See Sierra's First
28 Amended Complaint ("FAC"), ECF No. 11 at ¶ 18.

On or about September 9, Sierra advised ASIC of its intent to tender its defense in the Cal Fire Action.[7]  Rhonda Cully ("Cully") was assigned to handle Sierra's claim.  On September 22, Cully had a telephone conversation with Sierra's corporate counsel and during that call, Sierra's counsel advised Cully that Sierra had retained Downey Brand to defend it and that Sierra would be tendering its defense to ASIC.  That day, Sierra's counsel sent a letter to ASIC tendering its defense in both cases.[8]

On September 30, Sierra's Downey Brand counsel apparently informed Cully by phone that he was preparing answers to the Complaints in both the Cal Fire Action and Federal Action.  Then, on October 1, Cully, apparently in the course of a telephone conversation with representatives of Sierra, informed Sierra that ASIC was accepting Sierra's defense in the Cal Fire and Federal Action without a reservation of rights and would provide Sierra with panel counsel, specifically Mike Budra ("Budra") from the Law Office of James D. Biernat (the "Biernat firm").

///

///

///

---

[7] To be precise, ASIC states that Sierra contacted "Liberty Mutual," but Liberty Mutual appears to be a parent or otherwise related company to ASIC (the relationship is not defined in ASIC's counterclaim), so, in the interest of minimizing the number of names discussed herein, the Court will refer to Liberty Mutual as ASIC.

[8] On or about September 30, 2009, the Landowners sent a letter to Sierra and/or Downey Brand tendering their defense of the Cal Fire and Federal Actions to Sierra pursuant to the indemnity provision in the Landowners/Sierra contract.

ASIC maintains that Budra and the Biernat firm were qualified to
defend Sierra, because the firm had tried a total of seventy
cases to verdict, including ones in state and federal court, as
well as some unspecified number of fire cases.  Sierra's
representatives, however, did not agree to ASIC's choice of
counsel and indicated that because of the concerns regarding
Sierra's excess exposure, Sierra wanted Downey Brand to continue
as defense counsel.[9]

On October 7 and 14, Cully wrote to Sierra, confirming
acceptance of the tender of defense without a reservation of
rights and stating that ASIC had selected Budra of the Biernat
firm as defense counsel.  In addition, Cully communicated to
Sierra that she understood Sierra had obtained an extension of
time to respond in the Cal Fire Action and had not yet been
served in the Federal Action.[10]  For several days thereafter,
Sierra and ASIC engaged in negotiations regarding whether Downey
Brand or the Biernat firm would represent Sierra.  Then, on
October 23, a Sierra representative wrote to Cully arguing that
Sierra had the right to select its own independent counsel
because of the conflict between Sierra and Howell, which are both
insured by ASIC.

///

---

[9] Although not discussed in ASIC's Counterclaim, Sierra's
FAC indicates that ASIC's policy limit is $1 million, but the
aggregate of all the claims in the seven actions that have been
brought against Sierra (only two of which are discussed herein)
is approximately $1 billion.  See FAC at ¶¶ 20-23, 28.

[10] ASIC goes on to allege that additional extensions for
Sierra's response were thereafter granted in the Cal Fire Action
and Federal Action.

1   On November 9, ASIC sent a letter to Sierra stating that
2   Sierra was not entitled to independent counsel, but that ASIC was
3   willing to pay the $150 per hour Biernat firm rate for Downey
4   Brand's services.  On or about January 1, 2010, Sierra rejected
5   ASIC's contention that it had the right to select defense
6   counsel, as well as ASIC's offer to pay the $150 per hour panel
7   counsel rates for Downey Brand services.
8      Throughout 2009 - November 2010, as Sierra tendered its
9   defense for the various other actions that were filed against it,
10  ASIC accepted the defense without a reservation of rights.[11]
11  ASIC also represents that it defended Howell without a
12  reservation of rights and provided Howell with panel counsel, but
13  not the Biernat firm.
14     In October 2010, Sierra, for the first time, forwarded
15  Downey Brand invoices for attorneys' fees and costs incurred in
16  the Cal Fire Action and Federal Action for the period of August
17  2009 - August 2010, which totaled approximately $1 million, to
18  ASIC.  ASIC alleges that Downey Brand provided only minimal
19  services concerning a response to the Cal Fire Action before
20  Cully advised Sierra on October 1, 2009, that American was
21  accepting its defense.
22     As ASIC received the Downey Brand invoices, it requested
23  clarification for the various charges.
24  ///

25

26  [11] In February, Sierra tendered the Landowners' defense in
    the various actions to ASIC, which ASIC then denied in March.
27  ASIC thereafter sent Sierra a letter advising Sierra that the
    Landowners were not "additional insureds" under the ASIC policy
28  and the contract between ASIC and the Landowners was not
    otherwise covered under the ASIC contract.

1  Then, on or about February 1, 2011, ASIC issued a check for
2  $582,819.41 to Sierra, which ASIC contends represented full
3  payment of all Downey Brand invoices in defense of Sierra in the
4  Moonlight Fire actions, adjusted for, inter alia, the $150 panel
5  counsel billing rate, unnecessary and/or unreasonable charges,
6  and non-defense work.  On February 7, 2011, Sierra cashed the
7  check and, that same day, it filed its complaint in this action.

8       On July 18, 2011, this Court denied ASIC's Motion to Dismiss
9  Sierra's First Amended Complaint.  (ECF No. 19.)  On August 1,
10 2011, ASIC filed its Counterclaim (ECF No. 20).  In its
11 Counterclaim, ASIC asserts two claims for relief: (1) declaratory
12 relief, in which ASIC essentially seeks an order from this Court
13 that it was entitled to control Sierra's defense in the Moonlight
14 Fire actions and that the Biernat firm was not conflicted; and
15 (2) breach of the duty to cooperate and/or breach of contract, in
16 which ASIC contends that by refusing to relinquish control over
17 the lawsuit and refused to accept panel counsel rates, Sierra
18 breached its duty to cooperate or otherwise breached the contract
19 with ASIC.  (Counterclaim, ECF No. 20, pp. 20-24.)  Sierra
20 thereafter moved to dismiss, pursuant to Federal Rule of Civil
21 Procedure 12(b)(6), ASIC's second claim for relief in its
22 Counterclaim.[12]  (MTD, ECF No. 26.)
23 ///
24 ///
25 ///
26 ///
27
28      [12] All further references to "Rule" or "Rules" shall be to
   the Federal Rules of Civil Procedure unless otherwise noted.

8

In its Motion to Dismiss, Sierra generally alleges that ASIC cannot maintain this claim because it did not reserve its rights, the cooperation clause does not support an independent cause of action, and ASIC cannot allege any prejudice because the status quo is that Downey Brand is the present defense counsel and ASIC is paying Downey Brand panel counsel rates.

On September 8, 2011, Sierra filed its Motion for Judgment on the Pleadings. (("MJoP"), ECF No. 27.)  In this motion, Sierra argues that ASIC's coverage only extends to SPI's vicarious liability, not its independent liability, therefore ASIC has an inherent and irreparable conflict of interest. Sierra seeks an order from this Court that declares that Sierra was entitled to independent counsel and that ASIC did not have the right to control Sierra's defense.

## ISSUES AND ANALYSIS

Currently before the Court are Sierra's Motion to Dismiss ASIC's second claim for relief in its Counterclaim (ECF No. 26) and Sierra's Motion for Judgment on the Pleadings (ECF No. 27). The Court will discuss each in turn.

///
///
///
///
///
///
///

1    **A.    Motion to Dismiss**

2        **1.    Parties' Contentions**

3

4        As a matter of law, Sierra contends that ASIC's second claim

5    in its Counterclaim, which is for breach of the duty to cooperate

6    and/or breach of contract, must be dismissed because: (1) ASIC

7    did not reserve its rights and accepted the defense of all of

8    Sierra's claims in all the Moonlight Fire actions, therefore, it

9    is precluded from seeking reimbursement from Sierra; (2) as an

10   insurer, ASIC cannot maintain a cause of action against its

11   insured for a breach of the cooperation clause; and (3) ASIC does

12   not and cannot allege any prejudice because it has conceded it

13   was willing to use Downey Brand and paid the $150 panel counsel

14   rate for Downey Brand's services.  (MTD, ECF No. 26 at pp. 8-12.)

15       ASIC responds that: (1) Sierra breached the policy

16   conditions that established ASIC's right to control Sierra's

17   defense, which ASIC contends is both a failure to cooperate and a

18   breach of California's implied covenant of good faith and fair

19   dealing; (2) ASIC did not breach its defense obligation and its

20   retained counsel did not have a conflict of interest; and

21   (3) ASIC's acceptance of Sierra's defense without a reservation

22   of rights did not waive its right to relief for Sierra's alleged

23   breach of contract.  (Opposition, ECF No. 29 at 7-23.)

24   ///

25   ///

26   ///

27   ///

28   ///

1   Sierra replies that: (1) ASIC can not maintain an action for
2   reimbursement without a reservation of rights; (2) ASIC cannot
3   maintain an action for damages based on a breach of the
4   cooperation clause; (3) because there is no breach of the
5   cooperation clause, there is no presumption of prejudice;
6   (4) ASIC waived its right to reimbursement when it advanced
7   defense costs without reserving its rights; and (5) Sierra did
8   not breach the contract by using independent counsel.  (Reply,
9   ECF No. 31 at 5-13.)

10

11          **2.    Standard for 12(b)(6) Motion to Dismiss**

12

13          On a motion to dismiss for failure to state a claim under
14   Rule 12(b)(6), all allegations of material fact must be accepted
15   as true and construed in the light most favorable to the
16   nonmoving party.  <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336,
17   337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and
18   plain statement of the claim showing that the pleader is entitled
19   to relief" in order to "give the defendant fair notice of what
20   the. . . claim is and the grounds upon which it rests."  <u>Bell</u>
21   <u>Atl. Corp. v. Twombly</u>, 550 U.S. 544, 554-55 (2007) (internal
22   citations and quotations omitted).
23          Though "a complaint attacked by a Rule 12(b)(6) motion to
24   dismiss does not need detailed factual allegations, a plaintiff's
25   obligation to provide the 'grounds' of his 'entitlement to
26   relief' requires more than labels and conclusions, and a
27   formulaic recitation of the elements of a cause of action will
28   not do."  <u>Id.</u> at 555 (internal citations and quotations omitted).

A plaintiff's factual allegations must be enough to raise a right to relief above the speculative level. Id. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("The pleading must contain something more. . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Moreover, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Twombly, 550 U.S. at 555, n.3 (internal citations omitted). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570; see also Ashcroft v. Iqbal, 556 U.S. 662, 677-679 (2009). If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 680.

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Rule 15(a) empowers the court to freely grant leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment. . . ." Foman v. Davis, 371 U.S. 178, 182 (1962). Leave to amend is generally denied when it is clear the deficiencies of the complaint cannot be cured by amendment.

///

12

1  DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir.
2  1992); Balistieri v. Pacifica Police Dept., 901 F. 2d 696, 699
3  (9th Cir. 1990) ("A complaint should not be dismissed under Rule
4  12(b)(6) unless it appears beyond doubt that the plaintiff can
5  prove no set of facts in support of his claim which would entitle
6  him to relief.") (internal citations omitted).
7
8        **3.   Analysis**
9
10       An insurer is required to defend its insured if the
11  underlying claim against the insured is potentially covered by
12  the policy.  George F. Hillenbrand, Inc. v. Ins. Co. of N. Am.,
13  104 Cal. App. 4th 784, 800 (Cal Ct. App. 2002).  An insurance
14  policy's duty to defend is broader than the duty to indemnify,
15  and an insurer must defend a suit which potentially seeks damages
16  within the coverage of the policy.  Anthem Elecs., Inc. v. Pac.
17  Emp'rs Inc. Co., 302 F.3d 1049, 1054 (9th Cir. 2002).  The duty
18  to defend is "a continuing one, arising on tender of defense and
19  lasting until the underlying lawsuit is concluded." Montrose
20  Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 295 (Cal. 1993).
21  "Imposition of an immediate duty to defend is necessary to afford
22  the insured what it is entitled to: the full protection of a
23  defense on its behalf." Id.
24       The duty to defend imposes upon the insurer several
25  responsibilities:
26  ///
27  ///
28  ///

1     (1) to make immediate inquiry into the facts of any
2     serious accident as soon as practicable after its
      occurrence; (2) on the filing of suit against its
3     assured to employ competent counsel to represent the
      assured and to provide counsel with adequate funds to
4     conduct the defense of the suit; (3) to keep abreast of
      the progress and status of the litigation in order that
5     it may act intelligently and in good faith on
      settlement offers.

6  Merritt v. Reserve Insurance Co., 34 Cal. App. 3d 858, 882 (Cal.

7  Ct. App. 1973).

8       In general, an insurer has the right to control the defense

9  it provides to its insured.   James 3 Corp. v. Truck Ins. Exch.,

10 91 Cal. App. 4th 1093, 1105 (Cal. Ct. App. 2002).   However, when

11 an insurer breaches its duty to defend, the insurer forfeits its

12 right to control defense of the action.   Intergulf Dev. v. Super.

13 Ct., 183 Cal. App. 4th 16, 20 (Cal. Ct. App. 2010) (citing

14 Fuller-Austin Insulation Co. v. Highlands Ins. Co.,

15 135 Cal. App. 4th 958, 984 (Cal. Ct. App. 2006); Atmel Corp. v.

16 St. Paul Fire & Marine Ins. Co., 426 F. Supp. 2d 1039, 1047 (N.D.

17 Cal. 2005)).   As such, when an insured breaches the duty to

18 defend, an insured has the right to retain its own counsel to

19 defend it.   See Amato v. Mercury Cas. Co., 53 Cal. App. 4th 825,

20 834 (Cal. Ct. App. 1997).

21      Furthermore, the duty to appoint independent counsel

22 materializes when a conflict of interest arises between the

23 insurer and insured.   See San Diego Federal Credit Union v. Cumis

24 Ins. Society, Inc., 162 Cal. App.3d 358 (Cal. Ct. App. 1984); now

25 codified at Cal. Civ. Code § 2860(a).[13]

26 _____

27      [13] Cal Civ. Code § 2860(a) provides, in full:

28                                              (continued...)

14

1  In particular, independent counsel is required where there is a

2  reservation of rights "and the outcome of that coverage issue can

3  be controlled by counsel first retained by the insurer for the

4  defense of the claim."  Cal. Civ. Code § 2860(b).[14]

5      The fact that the insurer disputes coverage and is defending

6  on a "reservation of rights" basis does not preclude insurer-

7  appointed independent counsel from providing a quality defense.

8  Dynamic Concepts, Inc. v. Truck Ins. Exch., 61 Cal. App. 4th 999,

9  1007 (Cal. Ct. App. 1988); Golden Eagle Ins. Co. v. Foremost Ins.

10  Co., 20 Cal. App. 4th 1372, 1394 (Cal. Ct. App. 1993).  To

11  establish a sufficient conflict to disqualify the insurer from

12  controlling the defense of its insured, the conflict must be

13  "significant, not merely theoretical, actual, not merely

14  potential."

---

[13](...continued)
If the provisions of a policy of insurance impose a
duty to defend upon an insurer and a conflict of
interest arises which creates a duty on the part of the
insurer to provide independent counsel to the insured,
the insurer shall provide independent counsel to
represent the insured unless, at the time the insured
is informed that a possible conflict may arise or does
exist, the insured expressly waives, in writing, the
right to independent counsel. An insurance contract may
contain a provision which sets forth the method of
selecting that counsel consistent with this section.

[14] Cal Civ. Code § 2860(b) provides, in full:

For purposes of this section, a conflict of interest
does not exist as to allegations or facts in the
litigation for which the insurer denies coverage;
however, when an insurer reserves its rights on a given
issue and the outcome of that coverage issue can be
controlled by counsel first retained by the insurer for
the defense of the claim, a conflict of interest may
exist. No conflict of interest shall be deemed to exist
as to allegations of punitive damages or be deemed to
exist solely because an insured is sued for an amount
in excess of the insurance policy limits.

15

1  James 3 Corp., 91 Cal. App. 4th at 1101 (quoting Dynamic
2  Concepts, 61 Cal. App. 4th at 1007).

3      A disqualifying conflict exists if the insurer-appointed
4  independent counsel has "incentive to attach liability to the
5  insured."  Id. (quoting Blanchard v. State Farm Fire & Cas. Co.,
6  2 Cal. App. 4th 345, 350 (1991)).  "The test is whether the
7  conflict precludes the insurer-appointed counsel from presenting
8  a quality defense for the insured."  Id. (quoting 7 Croskey
9  et al., Cal. Practice Guide: Ins. Litig. 772 (1999)).  However,
10 "[n]o conflict of interest shall be deemed to exist . . . solely
11 because an insured is sued for an amount in excess of the
12 insurance policy limits."  Cal. Civ. Code § 2860(b).

13     Before turning to a discussion of the parties' contentions,
14 the Court notes that the facts as alleged by ASIC in its
15 Counterclaim contrast in material ways with those alleged by
16 Sierra in its First Amended Complaint and relied on by the Court
17 in its July 18, 2011, Order denying ASIC's Motion to Dismiss.
18 Specifically, in Sierra's First Amended Complaint, Sierra
19 generally alleges that it timely tendered its defense and ASIC
20 delayed providing Sierra with defense counsel, which compelled
21 Sierra to retain Downey Brand as its independent counsel.  (See,
22 e.g., this Court's July 18, 2011, Order, ECF No. 19 at 3.)

23     In contrast, ASIC alleges in its Counterclaim that Sierra
24 retained Downey Brand to conduct its defense of the Moonlight
25 Fire actions before it ever contacted ASIC, that Sierra
26 maintained from the outset that it desired to keep Downey Brand,
27 and that Sierra refused to relinquish control of the litigation
28 to ASIC.

16

1   ASIC also contends that it timely: (1) responded to all of

2   Sierra's communications; (2) agreed to defend without a

3   reservation of rights; and (3) procured competent independent

4   counsel – The Biernat firm – to defend Sierra.

5        Relying on <u>Buss v. Superior Court</u>, 16 Cal. 4th 35 (Cal.

6   1997) and its progeny, Sierra contends that ASIC cannot, as a

7   matter of law, seek reimbursement for costs because it did not

8   proceed with Sierra's defense under a reservation of rights.

9   (<u>See</u> MTD, ECF No. 26 at 8-9.)  This argument is unavailing.  The

10  principle established by <u>Buss</u> is that an insurer must

11  specifically reserve its rights if it wishes to seek

12  reimbursement for claims that may potentially not be covered

13  under the operative policy.  <u>Buss</u>, 16 Cal. 4th at 49-53, 59.

14  However, coverage is not at issue here.  Rather, what is at issue

15  is whether ASIC can recover from Sierra because Sierra allegedly

16  breached its contract with ASIC by refusing to relinquish control

17  of its defense.  Furthermore, ASIC's contention that Sierra

18  cannot show prejudice because it eventually wrote a check for

19  Downey Brand's services at the $150 an hour panel counsel rate is

20  also unpersuasive, as ASIC's compromise does not establish that

21  it did not suffer damage or detriment to its legal rights.

22       As alleged by ASIC, Sierra's actions interfered with ASIC's

23  right to control the litigation, in contravention to Sierra's

24  obligation under the Policy to relinquish control of the defense

25  to ASIC and to cooperate with ASIC in its defense.

26  ///

27  ///

28  ///

17

1   See, e.g., Safeco Ins. Co. v. Superior Court, 71 Cal App. 4th

2   782, 787 (Cal. Ct. App. 1997) ("When the insurer provides a

3   defense to its insured, the insured has no right to interfere

4   with the insurer's control of the defense . . . ."); Truck Ins.

5   Exchange v. Unigard Ins. Co., 79 Cal. App. 4th 966 (Cal. Ct. App.

6   2000) ("Where an insured violates a cooperation clause, the

7   insurer's performance is excused if its ability to provide a

8   defense has been substantially prejudiced.")  At this stage of

9   the litigation, the Court cannot find, as a matter of law, that

10  ASIC cannot state a cause of action for breach of contract.[15]

11  See, e.g., Kransco v. American Empire Surplus Lines Ins. Co.,

12  23 Cal. 4th 390, 400-402 (Cal. 2000) (noting that the "duty of

13  good faith and fair dealing in an insurance policy is a two-way

14  street, running from the insured to his insurer as well as vice

15  versa" and that "[b]ecause the covenant is a contract term, in

16  most cases compensation for its breach is limited to contract

17  rather than tort remedies" (internal quotation marks and citation

18  omitted)).

19      Here, the Policy establishes that ASIC has a duty to defend

20  and that Sierra has a duty to cooperate in ASIC's defense.

21  Specifically, ASIC alleges that it: (1) did not delay in

22  acknowledging coverage, accepting defense, or paying defense

23  costs; (2) did so without a reservation of rights; and (3) timely

24  provided competent counsel.

25  ///

26  _____

27      [15] To the extent that both parties are supporting their
    arguments with memorandum decisions of the Ninth Circuit, the
28  Court finds these cases to be factually distinguishable and
    otherwise unpersuasive.

1  Further, ASIC contends that there was no conflict of interest,
2  and therefore no right to independent counsel for Sierra,
3  because: (1) ASIC defended without a reservation of rights;
4  (2) its Counterclaim is independent of the coverage issues and
5  does not create a right to independent counsel; and (3) whether
6  ASIC is obligated to defend the Landowners is also an independent
7  issue.

8       Because the Court is not persuaded by Sierra's argument
9  that, as a matter of law, ASIC cannot proceed on its Second Claim
10 for Relief in its Counterclaim, the Court therefore denies
11 Sierra's Motion to Dismiss.

12
13      **B.   Motion for Judgement on the Pleadings**
14           **1.   Parties' Contentions**
15

16      In its motion for Judgment on the Pleadings (MJoP, ECF
17 No. 27), Sierra contends that the pleadings establish that, as a
18 matter of law, ASIC had a duty to provide independent counsel
19 because of conflicts of interest, despite the fact that ASIC did
20 not reserve its rights.  Specifically, Sierra argues that ASIC's
21 Policy does not cover claims related to SPI's independent
22 negligence, only Sierra's vicarious liability for Howell's
23 negligence, therefore the United States' allegation in the
24 Federal Action that Sierra has independent liability for its
25 failure to maintain a fire lookout constitutes a conflicting
26 interest that cannot be reconciled and mandates independent
27 counsel.
28 ///

1  Sierra also contends that ASIC's interest in keeping costs low is

2  an insurmountable conflict of interest in such high-stakes

3  litigation.  Finally, Sierra argues that ASIC's counterclaim

4  automatically requires independent counsel.

5      ASIC responds that the pleadings do not establish a conflict

6  of interest entitling Sierra to independent counsel.[16]  (ECF

7  No. 30.)  In particular, ASIC states that Sierra's "independent

8  liability" argument does not establish a conflict of interest

9  because ASIC waived the right to contest coverage on that ground

10 when it accepted Sierra's defense without a reservation of rights

11 and provided competent counsel in the form of the Biernat firm.

12 ASIC also contends that its counterclaim does not create a

13 conflict of interest because coverage is not at issue, rather,

14 Sierra's alleged breach of the contract is at issue.

15 Furthermore, ASIC argues that the high stakes nature of the

16 litigation does not create a conflict of interest.

17

18      **2.   Standard**

19

20      Under Federal Rule of Civil Procedure 12(c), "a party may

21 move for judgment on the pleadings" after the pleadings are

22 closed "but early enough not to delay trial."  Rule 12(c).  A

23 Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6)

24 motion to dismiss for failure to state a claim, and therefore the

25 same legal standard applies.

26

27      [16] ASIC also argued that Sierra's motion was premature.
   Although that may have been true at the time, it is no longer the
28 case, and the Court is inclined to consider the merits of
   Sierra's motion.

1   <u>Cafasso v. General Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1055
2   n.4 (9th Cir. 2011). That is, a court considers "whether the
3   complaint's factual allegations, together with all reasonable
4   inferences, state a plausible claim for relief." <u>Id.</u> at 1054.
5
6           **3.   Analysis**
7
8        "'As statutory and case law make clear, not every conflict
9   of interest triggers an obligation on the part of the insurer to
10  provide the insured with independent counsel at the insurer's
11  expense. For example, the mere fact the insurer disputes
12  coverage does not entitle the insured to Cumis counsel; nor does
13  the fact the complaint seeks punitive damages or damages in
14  excess of policy limits.'" <u>James 3 Corp.</u>, 91 Cal. App. 4th at
15  1101 (quoting <u>Golden Eagle Ins. Co. v. Foremost Ins. Co.</u>,
16  20 Cal. App. 4th 1372, 1394 (Cal. Ct. App. 1993). For
17  independent counsel to be required, the conflict of interest must
18  be "significant, not merely theoretical, actual, not merely
19  potential." <u>Dynamic Concepts</u>, 61 Cal. App. 4th at 1007.
20       Here, ASIC accepted Sierra's defense without a reservation
21  of rights to contest coverage based on Sierra's independent
22  liability. Given that ASIC proceeded without a reservation of
23  rights, the Court cannot conclude that, as a matter of law, the
24  independent liability claim against Sierra in the federal action
25  gives rise to an actual conflict of interest with ASIC.
26  ///
27  ///
28  ///

1   See Foremost Ins. Co. v. Wilks, 206 Cal. App. 3d 251, 258 (Cal.

2   Ct. App. 1988) (holding no right to independent counsel in a

3   defamation action where the insurer agreed to defend without

4   raising intentional acts exclusion).

5        Furthermore, it is clearly established that the fact that

6   the value of the case is in excess of the policy limits does not

7   create a conflict of interest.  James 3 Corp., 91 Cal. App. 4th

8   at 1101; Cal. Civ. Code § 2860(b) ("[n]o conflict of interest

9   shall be deemed to exist . . . solely because an insured is sued

10  for an amount in excess of the insurance policy limits").

11  Sierra's argument that there is a conflict because the value of

12  the case exceeds the Policy's limits and ASIC has an incentive to

13  keep costs low is a minor variation on this argument and is

14  therefore on unavailing.

15       Sierra's contention that ASIC's Counterclaim automatically

16  creates a conflict of interest is also unpersuasive.  As

17  discussed above, ASIC accepted Sierra's defense without a

18  reservation of rights and the claims for relief in ASIC's

19  Counterclaim are independent of the issues in the underlying

20  case.  There is, in short, no reason to conclude, as a matter of

21  law, that there is a conflict of interest.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

22

1    Although the Court noted in its prior order that "Plaintiff
2    points to numerous potential conflicts of interest" and stated
3    that "[t]hese conflicting interests cannot be reconciled, and may
4    be sufficient" to entitle Sierra to independent counsel (see ECF
5    No. 19 at 11-12), the Court cannot conclude that, as a matter of
6    law, that there is a significant actual conflict of interest
7    between ASIC and Sierra that entitles Sierra at this time to a
8    judicial determination that it was and is entitled to independent
9    counsel.
10    Therefore, the Motion for Judgment on the Pleadings is
11   denied.
12
13                              **CONCLUSION**
14
15    As a matter of law, and for the reasons set forth above,
16   Sierra's Motions to Dismiss ASIC's Second Claim for Relief in its
17   Counterclaim (ECF No. 26.) and for Judgment on the Pleadings (ECF
18   No. 27.) are DENIED.
19    IT IS SO ORDERED.
20
     Dated: July 31, 2012
21
22
23                              MORRISON C. ENGLAND, JR.
                                UNITED STATES DISTRICT JUDGE
24
25
26
27
28

                                    23